Vol. 108]    PRIL TERM, 1900.    357

Bank of Hopkinsville, &c., v. Western Ky. Asylum for the Insane.

CASE 45—ACTION FOR DAMAGES FOR DIVERTING WATER FROM A STREAM.

108   357
127   471

# Bank of Hopkinsville, &c., v. Western Kentucky Asylum for the Insane.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS—REVERSED.

ACTIONS AGAINST STATE ASYLUMS—RIGHTS OF RIPARIAN OWNER—DIVERSION OF WATER—VENDOR AND PURCHASER—SINGLE RECOVERY FOR PAST AND FUTURE DAMAGES.

Held:  1. A State institution for the care of the insane, which is created a corporate body with power to sue and be sued, may be sued for damages resulting from its wrongful diversion of the water of a stream from a lower owner.

2. One who owns no land on a stream, except an acre bought for the purpose of a pumping station, is not a riparian owner.

3. A vendor who has repurchased from the vendee the land sold, paying therefor more than he received, can not recover damages for an injury to the land while the vendee held the title, as if there had been merely a rescission of the original contract.

4. A mill owner may recover damages for the injury to his business by the diversion of the water of a stream during his ownership, up to the filing of his petition, though the diversion began prior to his purchase; but he may not recover for future or permanent injury, as that, depending on the seasons and rainfall, can not be estimated with any certainty.

C. H. BUSH AND J. J. LANDES, ATTORNEYS FOR APPELLANTS.

1. Insane asylums are subject to be sued like other persons or corporations with respect to matters within their corporate authority or duty. Ky. Stats., secs. 217 and 237; Herr v. Central Lunatic Asylum, 97 Ky. Rep., 460; Williamson v. Louisville Industrial School of Reform, 95 Ky. Rep., 251.

2. The fact that the appellants did not own the legal title to the mill property at the time the diversion of the water by appellee began, will not prevent them from recovering damages after they acquired such title, where such diversion continues thereafter. Tye, &c., v. Catchings, 7 Ky. Rep., 463; Anderson v. Cin. South. R. R., 86 Ky. Rep., 44; Am. & Eng. Ency. of Law., vol. 28, page 981.

Bank of Hopkinsville, &c., v. Western Ky. Asylum for the Insane.

3. The rights of mill owners acquired under the statute regulating the establishment of mills, are paramount, and can not be lawfully infringed by any other person or corporation, or taken and applied to public use without just compensation previously paid. Constitution, sec. 242; Anderson v. Cin. Southern R. R. Co., *supra.*

JOHN FELAND, JR., AND PETREE & DOWNER, ATTORNEYS FOR APPELLE!

1. Material facts alleged in petition.
2. Action of court on demurrer to petition. State can not be sued. State funds can not be appropriated to pay damages. Ky. Stat., sec. 217; 1 Shearman & Red. on Negligence, 4th ed., secs. 249, 252, 253; also in vol. 1, secs. 302, 312, 319, 320 and 321; Cooley on Torts, (1st ed.), pages 379, 381 and 382; Thompson on Negligence, vol. 2, pages 818-897; Herr v. Cen. Ky. Asylum, 17 Ky. Law Rep., 320; Williamson, &c., v. Lou. Ind. School of Reform, 15 Ky. Law Rep., 629.
3. Suit is in corporate name of appellants *alone.* Ky. Stats., sec. 474.

OPINION OF THE COURT BY JUDGE WHITE—REVERSING.

The appellants are the owners of a gristmill on the east fork of Little river, in Christian county, and as such are the owners of the right to maintain a dam across said stream, acquired by condemnation proceedings had in the year 1846. The right thus given to erect and maintain the dam was for the purpose of using the water power thus afforded by the dam in running the mill. The appellee is a charitable institution, owned and conducted by the State, for the care and treatment of its insane citizens. The buildings and grounds of appellee are situated some three-fourths of a mile from Little river, and it owns no land on the river except one acre acquired by its commissioners by purchase, lying on both sides of the river, and including the river within the boundary, as it is not a navigable stream. On this acre on the river, appellee has

erected a pumping station, and by this means pumps out of the river, to a reservoir on the grounds, water as it is needed for domestic purposes, for the use of the inmates of the institution, as well as for the animals used in its work in carrying on the gardening and hauling necessary thereto. There are wells and springs on the grounds of appellee, but in themselves these are insufficient, and it became necessary to go elsewhere for water, and then the acre was purchased. The pumping station of appellee is up the stream from appellants' mill site.    Appellants brought this action in the Christian Circuit Court for damages to the mill property by reason of the diversion by appellee of the water from Little river, and thereby, as is charged, preventing a sufficient flow to run the mill. A demurrer to the petition was overruled. and appellee now insists that this was error. The contention of appellee being that it is a public charitable institution, established and maintained by the State, and its funds come wholly by public taxation collected into the public treasury, and from there distributed to appellee, and being thus an arm of the State government, an action can not be maintained against it.

The argument of counsel on this question is quite strong and persuasive, but the question is not an open one in this State. In the case of Herr v. Asylum, 97 Ky. 458, [30 S. W. 971, [28 L. R. A. 394,] this identical question was fully considered, and there determined adversely to appellee's contention. The commissioners of the asylum are created a corporate body, with power to sue and be sued, without qualification as to the causes of action. This must be held to be legislative consent.

Appellee filed answer to the petition, admitting the taking of the water as above stated, but alleged that the

quantity thus taken was only so much as, of necessity, was required for domestic purposes of the institution, and being, as alleged, a riparian owner along the stream, as well as in fact an owner of the stream, it had a legal right to all the water necessary for domestic uses of man and beast of the institution. It was pleaded, further, that at the date of the purchase by appellants of the mill the pumping station of appellee was in operation, and had been so used for some time, and any damages done by diverting the water from the stream, if there were in fact any damage, was done before appellant became the owners, and that for such damage the appellants could not recover. To this answer appellants replied, by saying that, before the erection of the pumping station by appellee, appellants were the owners of the mill, and had contracted a sale thereof to one Huffman, and that afterwards, Huffman not having paid for the mill, the contract of sale was rescinded, and the property was returned to appellants, and that appellants were the real beneficial owners all the time, and that it was while Huffman was in possession of the mill that the pumping station was built. The deeds were filed showing the conveyances to and from Huffman. A demurrer to this reply was filed; and, on motion, was carried back to the answer. The court overruled the demurrer to the answer, and sustained the demurrer to the reply, and, appellants failing to plead further, the petition was dismissed, and hence this appeal.

We are of opinion that the demurrer to the first paragraph of the answer, pleading that appellee was a riparian owner, and as such had a right to use all water necessary for domestic purposes, should have been sustained. By the admitted facts, appellee is not a riparian owner on the stream. Its institution is three-quarters of a mile from

the stream, and it owns no land on the stream except the acre bought for the purpose of the pumping station. It is unnecessary to discuss the rights of a riparian owner on the stream, as, in our opinion, it has no application to appellee's rights. It is not a riparian owner.

We are also of opinion that the demurrer to the second paragraph of the answer should have been sustained in so far as the facts pleaded are intended to bar appellants' right to recover anything by way of damage. The facts pleaded in this second paragraph, and as shown to exist by the exhibit filed with the reply, present a defense to any recovery for damage done to the mill prior to the deed from Huffman to appellants. This deed, instead of showing a rescission of the contract, shows a purchase by appellants from Huffman. The consideration recited in the deed from Huffman to appellants is the purchase-money notes given, "and in further consideration of the said parties of the second part surrendering to said Huffman some unsecured notes which they hold against him." This shows that appellants paid more for the mill property than they sold it for. But this fact will not bar a recovery by appellants for the actual damage done to the mill property by reason of diversion of the water from the stream, if such there be, after they became the owners of the mill, and up to the filing of the petition herein. The reply presented no facts in avoidance of the second paragraph of the answer. The pleading relies on the exhibit filed therewith, and these show that there was no rescission, but a purchase outright.

In view of a reversal, and a trial on the question of damages, we deem it not out of place to say that there can be no recovery for future or permanent damages to the mill property; for the reason that, depending on the seasons

and rainfall, it is too uncertain to be estimated with any certainty, but the recovery, if anything, will be confined to the actual damage done during appellants' ownership, up to the filing of this petition. For the reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

CASE 46—ACTION FOR PERSONAL INJURIES—APRIL 25.

